MARTIN VOGEL,

             Plaintiff,

    v.

WINCHELL'S DONUT HOUSES
OPERATING COMPANY, LP,

           Defendant.

       )
       )
       )
       )
       )
       )
       )
       )
       )
       )
       )
       )
       )
       )

CV 16-00887-RSWL-AJWx

**ORDER re: Defendant's
Motion for Summary
Judgment, or, in the
Alternative, Summary
Adjudication** [32]

Currently before the Court is Defendant Winchell's Donut Houses Operating Company, LP ("Defendant") Motion for Summary Judgment, or, in the Alternative, Summary Adjudication ("Motion") [32] as to all claims in the Complaint.  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Defendant's Motion.

///

## I. BACKGROUND

**A.  Factual Background**

Plaintiff Martin Vogel ("Plaintiff") is a "physically disabled" T-3 paraplegic who requires the use of a wheelchair when traveling in public.  Compl. ¶ 8, ECF No. 1.  Defendant owns, operates, and/or leases a Pizza Hut Restaurant in Norwalk, California (the "Restaurant").  Id. at ¶ 2.

Plaintiff visited the Restaurant on January 3, 2016.  Decl. of Martin Vogel ("Vogel Decl.") ¶ 2, ECF No 33-1.  Plaintiff alleges that both the Restaurant's disabled parking space and the access aisle are too steep, mainly due to an encroaching built-up ramp.  Compl. ¶ 10.  Because the parking space and access aisle are not level, Plaintiff cannot easily transfer from a vehicle because his wheelchair rolls, or a lift platform for his wheelchair cannot sit level.  Id.  These barriers prevented Plaintiff from full and equal access to the Restaurant, violating the Americans with Disabilities Act ("ADA") and related state-law disability claims.  Id.

After Plaintiff filed this lawsuit, Defendant repaved the disabled parking space and access aisle so that both comply with current accessibility standards.  Decl. of Tim Stockton ("Stockton Decl.") ¶ 1, ECF No. 32-3.  Currently, the parking space and access aisle slopes are no steeper than 1:48, in conformity with the ADA and California Building Code ("CBC") standards.

_Id._ at ¶ 2, Exs. A, B, ECF. Nos. 32:4-5.

**B.   Procedural Background**

On February 9, 2016, Plaintiff filed this Complaint, alleging Defendant violated the following: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, _et seq._, by denying him "full and equal enjoyment" of the Restaurant premises; (2) the California Disabled Persons Act ("CDPA"), California Civil Code § 54; (3) the Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51, and (4) denial of full and equal access to public facilities, California Health & Safety Code § 19955 _et seq._  Compl. ¶¶ 17, 36-38, 43-45, 48-51.

Plaintiff seeks declaratory judgment that Defendant violated the ADA.  _Id._ at ¶ 31.  For each CDPA offense, Plaintiff seeks actual damages, statutory minimum damages of $1,000, declaratory relief, and any other relevant remedies.  _Id._ at ¶ 37; Cal. Civ. Code § 54.3. For each Unruh Act violation, Plaintiff seeks statutory minimum damages of $4,000.  Compl. ¶ 45; Cal. Civ. Code § 52.  Plaintiff also seeks injunctive relief and attorneys' fees for any violation of California Health & Safety Code § 19955.  Compl. ¶ 51; Cal. Health & Safety Code § 19953.

On March 20, 2017, Defendant filed its Motion [32]. On March 28, 2017, Plaintiff filed his Opposition [33]. On April 4, 2017, Defendant filed its Reply and Evidentiary Objections [35-1] to the Vogel Declaration

[33-1].

## II. FINDINGS OF FACT

1. Plaintiff's Complaint identifies two alleged barriers: (1) a disabled parking space has excessive slopes due at least in part to an encroaching built-up curb ramp; (2) the access aisle has excessive slopes due mainly to an encroaching built-up curb ramp. Def.'s Stmt. of Uncontroverted Facts ("Def.'s SUF") ¶ 1, ECF No. 32-2; Pl.'s Stmt. of Genuine Disputes ("Pl.'s Facts") ¶¶ 1-2, ECF No. 33-4; Compl. ¶ 10.

## III. DISCUSSION

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983). In ruling on a motion for summary judgment, the

4

court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists.  Anderson, 477 U.S. at 255.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Nissan Fire & Marine Ins., 210 F.3d at 1102-03; see Fed. R. Civ. P. 56(a).  Summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial."  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issues of *material* fact."  Anderson, 477 U.S. at 247-48.

**B.  Discussion**

1.  Defendant's Evidentiary Objections

Defendant objects to the Vogel Declaration in its entirety, to Paragraphs 3 and 4, and to Exhibit A

depicting the alleged access barriers at the
Restaurant. See generally Def.'s Evid. Objs., ECF No.
35-1. Defendant objects on the following grounds: (1)
the Vogel Declaration is a sham declaration that
contradicts his deposition testimony; (2) Vogel did not
sign his declaration; (3) Vogel did not respond to
Defendant's Statement of Undisputed Facts, thus deeming
them admitted; (4) the declaration lacks foundation and
proffers mere legal conclusions. Id. at ¶¶ 1-4.

The "sham affidavit rule" states that a party
cannot create an issue of fact by proffering an
affidavit contradicting his prior deposition testimony.
Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th
Cir. 1991). There are two caveats to a district
court's discretion to invoke the sham affidavit rule:
(1) the rule does not apply when a contradictory
affidavit is introduced to explain portions of earlier
deposition testimony; and (2) the inconsistency between
a party's deposition testimony and subsequent affidavit
must be clear and unambiguous to justify striking the
affidavit. Van Asdale v. Int'l Game Tech., 577 F.2d
989, 998-999 (9th Cir. 2009). Here, the
inconsistencies between the declaration and excerpted
portions of Vogel's deposition testimony are not clear;
indeed, Defendant makes no effort to unpack the alleged
inconsistencies. Plaintiff's deposition testimony—that
he competes in wheelchair races requiring him to jump
off a curb—would seemingly contradict the allegation in

his declaration that the access barriers' slopes were too steep for him to transfer from his vehicle. Compare Vogel Dep., Ex. D. to Decl. of Michael J. Chilleen ("Chilleen Decl."), at 32:2-6, with Compl. ¶ 10. But upon a closer reading of the Complaint, Plaintiff does not complain of the access barriers in terms of his ability to maneuver over the curbs as he would during a wheelchair race; rather, he complains that he is unable to transfer or unload from his vehicle. Thus, the connection between the deposition testimony and allegations in the declaration is too tenuous to render the inconsistencies clear.

For declarations signed by individuals other than CM/ECF Filers, Local Rule 5-4.3.4 requires a hand-signed signature. It appears that Plaintiff is not a registered CM/ECF filer. Defendant asks the Court to strike the Vogel Declaration because Plaintiff has failed to properly sign it. But Defendant does not sufficiently develop this objection to compel the Court to strike the declaration in its entirety. Similarly, Defendant's remaining objections regarding legal conclusion and lacks foundation are "devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." United States v. HVI Cat Canyon, Inc., 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016). As to the argument that Plaintiff did not respond to Defendant's Statement of Undisputed Facts, Plaintiff appropriately

filed a Statement of Genuine Disputes pursuant to Local Rule 56-2. Accordingly, the Court **OVERRULES** Defendant's objections in their entirety [35-1].

    2. <u>ADA Claim</u>

Plaintiff raises a claim for violation of Title III of the ADA, which prohibits discrimination in any place of public accommodation. <u>Grove v. De La Cruz</u>, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005); 42 U.S.C. § 12182. In order to sustain a prima facie case for discrimination under Title III of the ADA, the plaintiff must show that (1) he or she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the defendant denied public accommodations to the plaintiff because of his or her disability. <u>See</u> 42 U.S.C. § 12182(a); <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007). Monetary damages are not available in private suits under Title III, <u>Wander v. Kaus</u>, 304 F.3d 856, 858 (9th Cir. 2002), but the ADA gives courts the discretion to award injunctive relief, attorneys' fees, litigation expenses, and costs to the prevailing parties. <u>See</u> 42 U.S.C. § 12205; <u>Molski</u>, 481 F.3d at 730.

Plaintiff points to two barriers which prevented him from enjoying the Restaurant accommodations: (1) the disabled parking space's slopes/cross-slopes are too steep, due to an encroaching built-up curb ramp;

(2) the access aisle's slopes/cross-slopes are too steep, due to an encroaching built-up curb ramp. Compl. ¶ 10.  Without a level parking space or access aisle, it is difficult for Plaintiff to transfer from his vehicle, as his wheelchair cannot roll or his lift platform cannot sit level.  Id.  Before reaching the merits of Plaintiff's ADA claim, the Court discusses Defendant's arguments regarding standing and mootness.

> a.  *Standing*

In order to have constitutional standing, Plaintiff must demonstrate that (1) he has suffered an injury-in-fact that is both concrete and particularized and actual or imminent; (2) the injury is traceable to the defendant's challenged action; and (3) it is likely that a favorable decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  In ADA cases, courts have been instructed "to take a broad view of constitutional standing . . . especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011)(internal quotation marks and citations omitted).  The Ninth Circuit has explained that there are two ways an ADA plaintiff can show a cognizable injury-in-fact: (1) by showing injury-in-fact plus an intent to return to the facility at issue; or (2) showing that he was deterred from visiting the facility because he encountered barriers

relating to his disability there.  Id. at 949.

Defendant argues that Plaintiff has no concrete plans to return to the Restaurant; thus, he has not suffered an injury-in-fact and lacks standing under the first "type" recognized by the Ninth Circuit.  Def.'s Mot. for Summ. J. ("Mot.") 5:16-18.  Plaintiff counters that he has standing because he alleged that he was deterred from returning to the Restaurant after encountering the access barriers on his January 3, 2016 visit.  Pl.'s Opp'n to Mot. For Summ. J. ("Opp'n") 6:26-28.

The record is sparse as to Plaintiff's genuine intent to return to the Restaurant.  To flesh out a plaintiff's intent to return, a court may look at the proximity of the facility to the plaintiff's residence, plaintiff's past patronage, plaintiff's concrete plans, and plaintiff's frequency of travel near the facility. Molski v. Mandarin Touch Restaurant, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005).  The Restaurant—part of a national chain—is in Norwalk, and Plaintiff could easily find a closer location to Pasadena, his stated residence.  Chilleen Decl. Ex. B, at 4:19-20, ECF No. 32-8.  Nor does Plaintiff provide a reason for frequent travel to Norwalk.  And Plaintiff's past patronage of the Restaurant is unclear—he does not indicate whether the January 3, 2016 visit was an isolated incident or

///

///

part of frequent visits to the Restaurant.[1]  Although
Plaintiff "enjoy[s] the Restaurant as well as the food
they sell" and intends to return in the future, he
admits that he does not have specific plans to return
at this time.  Vogel Decl. ¶ 3; Chilleen Decl. Ex. B,
at 9:17-18.  These facts do not evince a clear intent
to return found in other cases.  Cf. Doran v. 7-Eleven,
Inc., 524 F.3d 1034, 1040-41 (9th Cir. 2008)(sincere
intent to return where plaintiff had visited 7-Eleven
store ten to twenty times previously, the store was
near his favorite restaurant and near Disneyland where
he planned to visit at least once a year, and he
testified in deposition that he would return to the
store once the access barriers were fixed).  Thus,
Plaintiff has not demonstrated a concrete injury.

The Court is satisfied, however, that Plaintiff has
standing under the second "type" announced by the Ninth
Circuit.  "[A]n ADA plaintiff who has encountered or
has personal knowledge of at least one barrier related
to his or her disability when he files a complaint and
who has been deterred from attempting to gain access to
the public accommodation because of that barrier, has

---

[1] While not dispositive, the fact that Plaintiff has filed
529 ADA-related lawsuits since 2012—countless of them against
fast-food chains and other chain stores that can be visited
throughout California—also undercuts his intent to return to this
specific Restaurant.  Chilleen Decl. Ex. A; Mandarin Touch, 385
F. Supp. 2d at 1045 ("[Plaintiff] professes an intent to return
to each [of the 400] business[es] that he sues . . . one would
have to believe that he had a genuine desire to return to each
business he sued.")

suffered an injury in fact under Article III of the ADA." Doran, 524 F.3d at 1047. Plaintiff encountered the alleged ADA violations when he visited the Restaurant on January 3, 2016 and took photographs. Vogel Decl. Ex. A. And Plaintiff explains how the specific barriers relate to his disability as a wheelchair-bound paraplegic—the disabled parking space and access aisle have slopes/cross-slopes that are too steep, due to an encroaching built-up curb ramp, which make it difficult for Plaintiff to exit his vehicle, as his wheelchair rolls or his lift platform cannot sit level. Compl. ¶ 10; Kohler v. Bed Bath & Beyond of Cal., LLC, No. 11-4451 RSWL (Spx), 2012 WL 3018320, at *2 (C.D. Cal. July 23, 2012)(injury-in-fact satisfied where slope and cross-slope of disabled parking space exceeded maximum). Moreover, Plaintiff states that he would return to the Restaurant were it made accessible to him. Vogel Decl. ¶ 3. Considered together, this evidence makes it plausible that Plaintiff would be deterred from returning to the Restaurant. Thus, Plaintiff has standing to raise his ADA claim.

        b. *Mootness*

Defendant next argues that Plaintiff's ADA claim is moot because Defendant repaved the allegedly noncompliant disabled parking space and access aisle. Mot. 4:9-10. Plaintiff concedes that Defendant removed the access barriers after he filed his Complaint, but argues that even if his ADA claim is moot, his right to

12

statutory minimum damages under the state-law claims are not.  See Opp'n 3:4-7.

Because a plaintiff can only sue for injunctive relief in an ADA case, the Ninth Circuit has explained that "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim."  Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011); see also Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006)(defendant repaired ramp slope from public sidewalk to store entrance, which was too steep, thus mooting the ADA claim).

Previously, the disabled parking space and access aisle slopes were too steep, due at least to an encroaching built-up curb ramp.  Compl. ¶ 10. Defendant proffers a declaration from Tim Stockton, Defendant's Senior Director of Real Estate and Development, who personally supervised the repaving of the disabled parking space and access aisle.  Stockton Decl. ¶ 2.  Defendant also presents photographs that show the disabled parking space and access aisle slopes are currently no steeper than 1:48, in compliance with the ADA Accessibility Guidelines ("ADAAG").  Id. at ¶¶ 1-2, Exs. A-B, ECF Nos. 32:3-5; ADAAG § 502.4 ("[for parking spaces and access aisles] [s]lopes not steeper than 1:48 shall be permitted.")  The alleged ADA violations have been corrected, and Plaintiff does not dispute this, even stating that he "does not deny that

[the barriers] alleged in this Complaint were eventually removed." Opp'n 3:4-5; compare Def.'s SUF ¶¶ 2-3, with Pl.'s Facts. The Court thus **GRANTS** summary judgment as to the ADA claim.[2] Additionally, Plaintiff is correct that the ADA claim's mootness does not moot the CDPA, Unruh Act, and state-law claims for damages. Kohler v. Presidio Int'l, Inc., No. CV 10-4680 PSG (PJWx), 2013 WL 228120, at *2 (C.D. Cal. Jan. 22, 2013). Thus, the Court proceeds with an analysis of those remaining claims.

    3.  State-Law Claims

Defendant also moves for summary judgment as to the state-law claims under the CDPA, the Unruh Act, and the California Health & Safety Code. Because the Court grants summary judgment as to Plaintiff's ADA claim, the only remaining issue is whether the Court may exercise supplemental jurisdiction over the pendent state-law claims.

The Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28

---

[2] Because Defendant has fixed the barriers affecting the disabled parking space and access aisle, the Court will not entertain the parties' arguments whether, in Plaintiff's prima facie case for its ADA claim, the access barriers violated construction-related accessibility standards. See Parr v. L&L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000)(discussing the accessibility compliance of only non-remediated, non-mooted access barriers).

U.S.C. § 1367(a).  The ADA claims and state-law claims share a common nucleus of operative fact and are "part of the same case or controversy;" both use identical factual allegations and violations of the ADA constitute violations of the parallel sections in the Unruh Act and CDPA.  See Cal. Civ. Code §§ 51(f), 54(c).  Nevertheless, once the court acquires supplemental jurisdiction, it may decline to exercise it if:

    (1)  the claim raises a novel or complex issue of State law;

    (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

    (3)  the district court has dismissed all claims over which it has original jurisdiction, or;

    (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The decision to retain jurisdiction over state-law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity.  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995).

    Defendant argues that the Court should dismiss the remaining state-law claims as it has dismissed the ADA claim over which it has original jurisdiction. Plaintiff responds that "economy, convenience, fairness, and comity" dictate that the Court retain the

state-law claims, as they are borne out of the same facts as the ADA claims and because discovery and motion practice are complete and the case is set for trial.

Here, the Court granted summary judgment on the ADA claim, the only claim over which it has original jurisdiction. Thus, the Court declines to exercise supplemental jurisdiction over the state-law claims, as it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1). <u>See, e.g.</u>, <u>Oliver</u>, 654 F.3d at 910 (finding district court did not abuse its discretion in dismissing state-law claims under the Unruh Act and CDPA after losing original jurisdiction over ADA claim); <u>see also Rodgers v. Chevys Restaurants, LLC</u>, No. C13-03923 HRL, 2015 WL 909763 (N.D. Cal. Feb. 24, 2015)("In a Title III ADA action, a district court may properly decline supplemental jurisdiction over related state-law access claims once the ADA claim has been dismissed."). Nevertheless, to ensure "values of economy, convenience, fairness, and comity," the Court considers the parties' remaining arguments as to the supplemental jurisdiction inquiry.

First, Plaintiff is correct that the Court should not decline to exercise supplemental jurisdiction on the "novel or complex issues of state law" factor in section 1367(c)(1). Defendant generally argues that the recently enacted Senate Bill 1186 ("SB") presents

complex issues regarding how damages are calculated, mot. 16:20-22, but does not unpack how SB 1186, and the cited caselaw render the state-law claims complex with respect to Plaintiff's specific circumstances.  Thus, the Court will not decline supplemental jurisdiction on this ground.

However, the Court does decline to exercise supplemental jurisdiction over the state-law claims because the state-law claims substantially predominate over the federal ADA claim.  Plaintiff argues that ADA plaintiffs frequently join ADA, Unruh Act, and CDPA claims in one lawsuit because they require the same burden of proof and both the Unruh Act and CDPA allow for damages based on ADA violations.  Opp'n 13:12-14. "The mere fact that the Unruh Act incorporates violations of the ADA does not give [the] Court federal question jurisdiction over Plaintiff's state law claim." Carpenter v. Raintree Realty, LLC, No. CV 11-06798-RGK (MRWx), 2012 WL 2579179, at *2 (C.D. Cal. July 2, 2012).  At the same time, the Court hesitates to determine that the state-law claims predominate over the ADA claim merely because the ADA claim allows for injunctive relief, while the state law claims permit monetary damages and more expansive remedies.  To do so would "preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [or other state laws]." Kohler v. Islands Restaurants, LP, 956 F. Supp. 2d 1170, 1176

(S.D. Cal. 2013).  Thus, a more comprehensive look at
the facts at hand is necessary.

Molski v. EOS Estate Winery, No. CV 03-5880-GAF,
2004 WL 3952249, at *4 (C.D. Cal. July 14, 2005) is
instructive.  In that case, the court noted that
plaintiff's ADA claim was merely a "jurisdictional
hook" into federal court, but the "predominant focus"
of the lawsuit was his damages under his state-law
claims, even though he voluntarily limited himself to
$4,000.  Id.  Moreover, all but one of the claims were
state-law claims and plaintiff could just as easily
have sought injunctive relief through the state-law
claims, rather than by tacking on an ADA claim; thus,
"the federal claim add[ed] nothing to the lawsuit that
could not be obtained in Superior Court."  Id.  Here,
although Plaintiff similarly requested only $4,000 in
statutory damages for each Unruh Act offense, he seeks
more expansive remedies available under his state-law
claims, including mandatory attorneys' fees pursuant to
the Unruh Act and CDPA's fee-shifting provisions,
actual damages under the CDPA, and declaratory relief
under the CDPA.  Schutza v. McDonald's Corp., 133 F.
Supp. 3d 1241, 1247 (S.D. Cal. 2015).  And Plaintiff
states in his Complaint that he seeks declaratory
relief under the ADA "in order to pursue damages under
[the Unruh Act or CDPA]."  Compl. ¶ 31.  The facts,
then, would suggest that Plaintiff's state-law claims
predominate in a more meaningful way than a typical

case where Plaintiff tacks these state-law claims on to his primary ADA claim.

Plaintiff cites a handful of cases where district courts in this circuit concluded that Unruh Act and DPA claims do not substantially predominate over the federal ADA claims. See, e.g., Wilson v. PFS LLC, No. 06CV1046WQH(NLS), 2006 WL 3841517, at *6 (S.D. Cal. Nov. 2, 2006)(state law claims did not substantially predominate over ADA claims, as both claims are "identical" and an ADA violation constitutes a violation of the parallel state laws). However, Plaintiff's cases are distinguishable because there, unlike here, the ADA claim remained in the case, or the court declined to dismiss the ADA claim on standing or mootness grounds; thus, the court still had original jurisdiction over a claim in the case. For instance, in Johnson v. Makinen, No. 2:09-CV-796 FCD KJM, 2009 WL 2137130, at *3 (E.D. Cal. July 15, 2009)(emphasis added), the court concluded that the state-law claims did not substantially predominate over the ADA claim, as plaintiff did not abandon either claim, the *request for injunctive relief was not moot*, his federal claims equaled in number the state law claims, and his federal claim had not been dismissed. Here, unlike Makinen and the other cases on which Plaintiff relies, the ADA claim has been mooted and dismissed and the state-law claims far outnumber the federal claims.

Lastly, although not dispositive of the Court's

decision to decline supplemental jurisdiction, the
Court notes that since 2012, Plaintiff has been a
litigant in 529 cases, countless of which involve
state-law claims for damages hitched to his ADA claims
and similar allegations of access barriers to his
wheelchair. Vogel v. Rite Aid Corp., 992 F. Supp. 2d
998, 1004 (C.D. Cal. 2014)(Vogel filed suit with ADA,
CDPA, Unruh Act, and California Health & Safety Code
claims); Vogel v. Linden Optometry APC, CV 13-00295 GAF
SHX, 2013 WL 1831686, at *1 (C.D. Cal. Apr. 30,
2013)(same).  In EOS Estate Winery, 2005 WL 3952249, at
*4, the Court considered a serial ADA-plaintiff's
litigation strategy as an "exceptional circumstance"
that would warrant declining supplemental jurisdiction
under section 1367(c)(4): "[Molski] has developed a
well-oiled system: [he] files a complaint in which he
always complains of lack of van-accessible parking . .
. he asks for injunctive relief and damages, and waits
for settlement . . . [h]is intentions are not to obtain
injunctive relief, since he could do so by merely
filing suit under the ADA . . .  Molski instead
attaches the ADA claim to his state claims for damages
so he can get into the federal system, which he then
uses to his advantage."  While less extreme here,
Plaintiff often raises ADA and state-law claims while
complaining of disabled parking space and access aisle
slope steepness.  See, e.g., Vogel v. Salazar, No. SACV
14-00853-CJC (DFMx), 2014 WL 5427531, at *1 (C.D. Cal.

Oct. 24, 2014)(Vogel encountered access aisle and parking spaces with slopes that prevented him from unloading and transferring from his vehicle). This also counsels towards declining supplemental jurisdiction over the state-law claims.

"[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988). Bearing in mind the mooted ADA claim, and the above analysis regarding the section 1367(c) factors, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims and **GRANTS** Defendant's Motion as to the Unruh Act, CDPA, and California Health & Safety Code claims.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Summary Judgment as to the entire Complaint [32].


DATED: May 18, 2017          <u>s/ RONALD S.W. LEW</u>

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge